# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GARJON COLLINS,**

    **Plaintiff,**

**v.**                                       **CIVIL ACTION NO. 3:12cv74**
                                                                    **(Judge Groh)**

**M. WEAVER, Health Administrator,**
**E. ANDERSON, D.O., Staff Physician,**
**C. GHERKE, Physician's Assistant.**

    **Defendants,**

## REPORT AND RECOMMENDATION

### I.  Procedural History

The pro se plaintiff initiated this case on August 14, 2012, by filing a civil rights complaint against the above-named defendants. The plaintiff seeks relief for the defendants' alleged indifference to his serious medical condition. On August 23, 20012, the plaintiff was granted permission to proceed as a pauper, and on October 1, 2012, he paid his required initial partial filing fee. On November 15, 2012, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Summonses were issued that same day. On January 23, 2013, the defendants filed a Motion to Dismiss or, in the alternative for Summary Judgment with a memorandum in support. A <u>Roseboro</u> Notice was issued on January 25, 2013. On February 28, 2013, the plaintiff filed a response.

### II.  The Complaint

The plaintiff, who was designated to FCI Gilmer on November 1, 2011, alleges that during his intake screening, he was indifferently and generically examined by a physician's assistant, who acted

under the authority of defendants M. Weaver ("Weaver") and E. Anderson, D.O. ("Dr. Anderson"). The plaintiff maintains that he informed the PA that he had previously had two surgeries and had been treated intravenously with the antibiotic, Cipro, for recurring ear infections. Despite this information, the plaintiff maintains that the PA medically cleared him to be placed in administrative detention and told him that he would not be examined by a doctor for another fourteen days. The plaintiff maintains that the infection recurred on November 5, 2011, and he experienced ear pain, drainage and difficulty sleeping.

The plaintiff also alleges that Weaver and Dr. Anderson were both aware of the reoccurrence of his ear infection but delayed treatment. More specifically, it appears that the plaintiff is alleging that the Utilization Review Committee ("URC"), which included both Weaver and Dr. Anderson did not approve him for a consultation with an otolaryngologist until December 19, 2011. In addition, the plaintiff alleges that defendants Weaver and Dr. Anderson disregarded the otolaryngologist's recommendation that he attend a follow-up appointment in 2-4 weeks. In fact, the plaintiff alleges that as of August 6, 2012, he still had not been to the return appointment.

The plaintiff further alleges that defendant Weaver oversees a medical department that has surreptitiously withheld access to his medical file, thus violating his right to due process. More specifically, it appears that the plaintiff is alleging that defendant Weaver refused t o respond to written requests, a BP8 and a BP9 asserting his right to access and copy records from his medical files thus stagnating his relief through the administrative remedy process.

Finally, the plaintiff alleges that defendant C. Gherke ("Gherke"), a P.A., has refused to give him pain medication unless he consented to receive an injection of antibiotics and steroids. The plaintiff maintains that over the course of the last three years, he has taken six different antibiotics and

steroids prescribed by defendant Gherke without taking a culture to determine what bacteria is infecting his ear. The plaintiff contends that defendant Gherke disregarded his complaint that pain medication purchased from the commissary was ineffective and reaffirmed her refusal to dispense pain medication.

For relief, the plaintiff is seeking $30,000 each from defendants Weaver and Dr. Anderson and $5000 from defendant Gherke. In addition, the plaintiff is asking that the court order defendant Weaver to release his medical file to him. Finally, he is asking the court to order his transfer to a Federal Medical Center.

### III. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment

In support of their motion, the defendants allege that the plaintiff has failed to exhaust his administrative remedies. In addition, the defendants allege that he plaintiff cannot establish a claim for deliberate indifference to his medical needs. With respect to Health Services Administrator M. Weaver, the defendants allege that supervisory liability is not available. Finally, the defendants allege that they are immune from suit.

### IV. Plaintiff's Response

In response to the defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment, the plaintiff first alleges that his ability to exhaust his administrative remedies was thwarted by a pattern followed by FCI Gilmer administrative staff to give him responses to BP9s dated and signed by the warden nine days before he received them. Moreover, with respect to his administrative remedy requesting a medical transfer, the plaintiff maintains that he did mention problems with inadequately treated chronic ear infections as one reason for his request.

With respect to his claim for deliberate indifference, the plaintiff alleges that his medical records demonstrate a "universal awareness" that his problems were the domain of an ENT. The

3

plaintiff further alleges that the defendants Weaver and Dr. Anderson disregarded the recommendation of the ENT and delayed scheduling his return appoint for six months. The plaintiff then cites the holdings of several cases which he argues demonstrates that the medical care he received at FCI Gilmer amounts to deliberate indifference.

## V. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions"

4

or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).[1] Thus, a well-pleaded

---

[1]In elaborating on its holding in Twombly, the Court in deciding Iqbal, a civil right case, wrote:

Two working principles underlie our decision in Twombly. First the tenant that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation". (Internal quotation marks and citations omitted). Rule 8 . . . does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives the motion to dismiss.

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint they must be supported by factual allegations. When they are well-pleaded factual allegations, a court should assume never asked that he and then determine whether they plausibly give rise to an entitlement to relief.

129. S. Ct. at 1949-50.

complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but … must set forth specific facts showing

that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is properly only "[w]here the record taken as a whole could not lead a rational trier of fact to find the nonmoving party." Matsushita at 587 (citation omitted).

## VI. ANALYSIS

### A. Exhaustion of Administrative Remedies

A Bivens action like an action under 42 U.S.C. §1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act (PLRA). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. §1983 must first exhaust all available administrative remedies. 42 U.S.C. §1997e. Exhaustion as provided in §1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002).[2] Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741.

The United States Supreme Court has held that proper exhaustion of administrative remedies is necessary, thus precluding inmates from filing untimely or otherwise procedurally defective

---

[2]In Porter, an inmate sued the correctional officers who had severely beaten him. The inmate alleged that the correctional officers "placed him against a wall and struck him with their hands, kneed him in the back, [and] pulled his hair." Porter, 534 U.S. at 520.

administrative grievances or appeals and then pursuing a lawsuit alleging the same conduct raised in the grievance. See Woodford v. Ngo, 126 S.Ct. 2378 (2006). In Woodford, the United States Supreme Court clarified that the PLRA exhaustion requirement requires proper exhaustion. Id. at 2382. The Court noted that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. The Court found that requiring proper exhaustion fits with the scheme of the PLRA, which serves three main goals: (1) eliminating unwarranted federal court interference with the administration of prisons; (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Id. at 2388. As the Court concluded, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." Id.

The actions of the defendants regarding improper medical care constitute actions "with respect to prison conditions" within the meaning of the PLRA, and the requirement of exhaustion of administrative remedies applies to those actions and the alleged effects of those actions.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the Warden's response, he may appeal to the regional director of the Federal Bureau of Prisons (BP-10) within 20 calendar days of the Warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the

office of the General Counsel (BP-11) within 30 calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

The plaintiff has filed approximately 12 administrative remedies during his incarceration. Some of those grievances were filed before he arrived at FCI Gilmer and are not relevant to the instant complaint. Moreover, as discussed below, although the plaintiff attempted to exhaust administrative remedies regarding his medical issues at FCI Gilmer, he failed to fully and/or properly exhaust those remedies prior to filing the instant complaint.

On December 6, 2011, the plaintiff filed his first relevant administrative remedy at the institution level (Remedy ID 667596-F1) requesting to see an ENT for recurrent ear pain. (Doc. 33-3, p.2). On January 19, 2012, the Warden responded that "[the plaintiff] was evaluated by the physician assistant on December 14, 2011, for recurrent ear infections. During this visit, your ear, complaint was evaluated, treated with cipreofloxacin ear drops, and a request was placed through the Utilization Review Committee (URC) for you to be evaluated by an otolaryngologist, which was approved December 15, 2011. ....If dissatisfied with this response, you may appeal to the Regional Office...Your appeal must be received in the Regional Office within 20 calendar days from the date of this response." (Doc. 33-3, p. 1). On February 24, 2012, the plaintiff appealed to the Regional Office level (Remedy ID 667596-R1), which rejected the remedy as untimely. (Doc. 33-2, p. 3). The plaintiff was advised that he could resubmit the appeal in proper form within 10 days if he could obtain a staff memorandum verifying that the late filing was not his fault. (Docs. 33-1, p.2; 33-2, p.

3). On April 16, 2012, the plaintiff appealed to Central Office level (Remedy ID 6667596-A1), which rejected the appeal as untimely on May 1, 2012. (Doc. 33-2, p. 4). The plaintiff did not re-file this remedy request at any level.

On March 9, 2012, the plaintiff requested a medical transfer in remedy ID 679317-F1. On May 16, 2012, the request was denied at the institution level. (Doc. 33-2, p. 4). On May 31, 2012, the Regional Office rejected the request due to the plaintiff's failure to provide a copy of the institution level request, or a receipt. The plaintiff was advised that he could resubmit the request in proper form and should seek guidance from the staff. (Doc. 33-2, p. 5). On June 25, 2012, the plaintiff appealed the rejection to the Central Office. On July 10, 2012, the Central Office rejected the remedy request, concurring with the rationale of the Regional Office. The plaintiff was advised to correct the remedy request and re-submit it to the Region. (Id.). The plaintiff did not re-submit the remedy request.

On August 14, 2012, the plaintiff requested a copy of his medical records in Remedy ID No. 700879-F1. (Doc. 33-2, p. 6). This remedy was initiated on the same date his complaint was filed with this Court. Therefore, it is clear that the plaintiff did not even begin to exhaust his administrative remedies on this issue until **after** he mailed the complaint. Accordingly, the plaintiff cannot argue that he exhausted his administrative remedies on this issue before seeking relief from this Court.

In summary, the plaintiff's complaint addresses three issues; (1) deliberate indifference to his recurring ear infections; (2) a desire to be transferred to a BOP medical facility; and (3) a request for his medical records. As previously noted, the plaintiff did not begin the administrative remedy

process regarding his medical records until after he mailed his complaint, and accordingly, the Court is barred from considering this issue. With respect to the plaintiff's request that this Court order the BOP to transfer him to a medical facility, 18 U.S.C. §3621(b) provides that "[the Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate..." Furthermore, the transfer of a convicted and sentenced inmate is within the sound discretion of the Bureau of Prisons. Meachum v. Fano, 427 U.S. 215 (1976). Therefore, even if the plaintiff had exhausted his administrative remedy regarding his request for a transfer, this Court does not have authority to grant the relief requested. Therefore, the remaining issue is the plaintiff's request for monetary damages for the defendants' alleged indifference to his recurring ear infections.

The records supplied by the BOP clearly establish that the plaintiff did not properly exhaust his administrative remedies regarding this issue. Nevertheless, despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion);Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable);Aceves v.

Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request);Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where Plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms). Therefore, it is clear that in some instance dismissal for failure to exhaust is inappropriate due to the actions or inactions of the BOP.

In the instant case, the undersigned is mindful that the plaintiff has alleged that the administrative staff at FCI Gilmer followed a pattern of giving the plaintiff responses to the BP-9s, or institution remedies, nine days after they were dated and signed by the warden. The records indicate that the BP-9 response regarding recurrent ear pain was given to the plaintiff on January 19, 2012, and his BP-10 would have been due on February 8, 2012, but was not received until February 24, 2012. Even if one assumes that the plaintiff did not receive the BP9 until January 27, 2012, as he alleged on his BP-10, it would have been due on February 16, 2012, making it untimely in any event. Moreover, despite the fact that the plaintiff was advised that he needed to send a staff memo verifying that the late filing was not due to his fault, he made no effort to do so; instead simply filing his BP-11. Clearly, the plaintiff has not demonstrated the type of BOP activity that would prevent the defendants from asserting the affirmative defense of failure to exhaust as a basis for dismissing the plaintiff's complaint.

## VII. PLAINTIFF'S MOTION FOR JOINDER

On April 1, 2013, the plaintiff filed a Motion for Joinder of Defendants and Claim. Attached to the Motion is a letter, dated November 28, 2012, from the Federal Bureau of Prisons denying the plaintiff's administrative tort claim in the amount of $50,000. It is clear that the basis of the tort claim was the alleged failure of the medical staff at FCI Gilmer to properly treat his resistant ear infection. It would appear from the information currently available that the plaintiff has exhausted his administrative tort claim, thus permitting him to file a Federal Tort Claim Act. Although the plaintiff has not moved to amend his complaint to add a FTCA and the United States as a defendant, the undersigned believes that the plaintiff's Motion for Joinder should be construed as such and granted.

## VIII. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 33) be **GRANTED**, and the plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** with respect to his claim for deliberate indifference and access to medical records and be **DISMISSED WITH PREJUDICE** with respect to his request for an Order directing his transfer to a BOP medical facility. It is further recommended that the plaintiff's Motion (Doc. 51) be construed as a Motion To Amend and be **GRANTED**, and the plaintiff be directed to file this Court's form Federal Tort Claim within twenty-one days after entry of an Order regarding this Report and Recommendation.

Any party may file within fourteen (14) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the

Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of Court is directed to mail a copy of this Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

DATED: July 11, 2013

*/s/ John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE